IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Underwriters at Lloyd's, London, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 2:07-cv-4027-PMD |
| | ) | |
| | ) | **ORDER** |
| Dollar Rent-A-Car, Inc.; Dollar Rent-A- | ) | |
| Car System, Inc. a/k/a DTG Operations, | ) | |
| Inc.; Rental Car Finance Corporation; | ) | |
| Dollar Thrifty Automotive Group, Inc.; | ) | |
| JKR & Associates, Inc.; Empire Fire and | ) | |
| Marine Insurance Companies; and | ) | |
| Zurich American Insurance Company, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court upon Defendant JKR & Associates, Inc.'s ("JKR") Motion to Dismiss for Lack of Jurisdiction. For the reasons set forth herein, the court grants JKR's motion.

**BACKGROUND**

On November 9, 2007, Plaintiff Underwriters at Lloyd's, London ("Plaintiff" or "Lloyd's") filed the instant suit in the Court of Common Pleas for the Ninth Judicial Circuit, and the case was removed on December 14, 2007. Plaintiff alleges that Dollar Thrifty Automotive Group ("DTAG"), "through its Dollar and Thrifty brands, is primarily engaged in the business of the daily rental of vehicles to business and leisure customers through company-owned stores." (Compl. ¶ 5.) Plaintiff further alleges that "DTAG . . . leases vehicles to franchisees and other DTAG subsidiaries through its wholly owned and controlled subsidiary Rental Car Finance for use in the daily vehicle rental business, sells vehicle rental franchises worldwide and provides sales and marketing, reservations,

data processing systems, insurance and other services to franchisees." (*Id.*) Plaintiff states in its Complaint that JKR "contracted with DOLLAR to operate a rental car business located in Savannah, Georgia to supply rental cars for individuals to use in, among other places, South Carolina." (*Id.* ¶ 8.) JKR is a Georgia corporation with its principal place of business located in Savannah, Georgia. (*See id.* ¶ 7.)

According to Plaintiff, JKR and several other defendants collectively referred to as Dollar rented a car to Eileen W. Udell ("Renter" or "Udell") on or about November 13, 2004. (*Id.* ¶¶ 23, 39.) After Udell rented the car in Savannah, Georgia, she then drove that car to Folly Beach, South Carolina, parking it under or near property insured by Plaintiff. The vehicle caught fire, and the insured property in turn suffered fire damage. Lloyd's indemnified Mr. Frank Torchia, who held a homeowners' policy on the Folly Beach property, and Lloyd's now seeks to recover its losses from the named Defendants.

The Complaint alleges that "DOLLAR and/or JKR gave RENTER permission to operate the car on the roads and highways, including those in South Carolina." (*Id.* ¶ 41.) Plaintiff alleges in the first cause of action that Dollar and JKR were negligent, careless and reckless

> a. In supplying and/or providing RENTER with a car when they knew or should have known RENTER was incompetent, reckless, dangerous or otherwise not a suitable driver of a car;
> b. In failing to follow their own rental declination guidelines, rules or procedures as set forth above, which, had they been followed, would have resulted in not supplying RENTER with the car that caused the severe loss and damage to THE PROPERTY;
> c. In failing to perform a DMV check;
> d. In failing to request information from RENTER about her driving history;
> e. In providing a car to RENTER which was not properly maintained, conditioned or suited for the foreseeable uses which resulted in the car catching fire; and
> f. In otherwise failing to exercise due care.

(*Id.* ¶ 57.)

On December 21, 2007, Defendant JKR filed a Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting this court does not have personal jurisdiction over JKR. (*See* Mot. to Dismiss.) JKR states, "The Court lacks [p]ersonal [j]urisdiction over JKR due to the fact that JKR does not conduct business in South Carolina, has no facilities in South Carolina, provides no services in South Carolina and the contract alleged between JKR and Eileen W. Udell (RENTER) was entered into in the State of Georgia." (Mot. to Dismiss at 1.) Plaintiff filed a Response in Opposition to JKR's motion, and a Reply and Sur-Reply have also been filed.

On April 25, 2008, the court issued an order granting Plaintiff sixty days to conduct jurisdictional discovery. (*See* Doc. No. [34].) The parties then had additional time to file supplemental briefs. Plaintiff and Defendant JKR both filed a supplemental brief on July 30, 2008. JKR also filed a reply brief on August 11, 2008, (*see* Doc. No. [65]), and Plaintiff filed its reply brief on August 14, 2008. (*See* Doc. No. [66].) Because jurisdictional discovery is complete, the court will now consider the merits of JKR's Motion to Dismiss.

## **ANALYSIS**

When a court's personal jurisdiction over a non-resident defendant is challenged by a motion pursuant to Rule 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The Fourth Circuit has explained how a court is to make this determination:

> If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when . . . the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional

3

> basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

*Id.* (citations omitted).

In determining personal jurisdiction, the court uses a two-part analysis. *See Fallon Luminous Prods. Corp. v. Multi Media Electronics, Inc.*, 343 F. Supp. 2d 502, 504 (D.S.C. 2004). First, the court must determine whether the forum state's long-arm statute authorizes the exercise of jurisdiction. *Id.* Then, if the long-arm statute authorizes the exercise of jurisdiction, the court must determine if the assertion of jurisdiction comports with the constitutional standards of due process. *Id.* However, the South Carolina Supreme Court has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by the Due Process Clause. *Triplett v. R.M. Wade & Co.*, 261 S.C. 419, 427, 200 S.E.2d 375, 378-79 (1973). It thus allows that the two-step analysis collapse into due process analysis. *Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 657 n.2 (4th Cir. 1989); *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265 (D.S.C. 1995). The question, then is whether JKR has sufficient "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Two Fourth Circuit opinions shed light on when a district court may exercise personal jurisdiction over a non-resident defendant. In *Lake Shore*, the plaintiff brought suit against Peterson Builders and Lake Shore, Inc. in South Carolina. *Lake Shore*, 886 F.2d at 657. Peterson, a Wisconsin corporation with its principal place of business in Wisconsin, was engaged in the business of designing and manufacturing oceangoing vessels. *Id.* Lake Shore, a Michigan corporation with its principal place of business in Michigan, was engaged in the business of designing,

4

manufacturing, and selling cargo winches. *Id*. While the M.V. PAUL BUNYON was docked in Charleston, South Carolina, a turbine accessory base was damaged when a cargo winch allegedly malfunctioned, causing the accessory base to fall and become damaged. *Id*. When Peterson and Lake Shore moved to dismiss for lack of personal jurisdiction, the court granted the motion, and the plaintiff appealed. *Id*.

The Fourth Circuit affirmed, however, concluding the exercise of personal jurisdiction over Peterson and Lake Shore would exceed the limits of due process. *Id*. The Fourth Circuit explained the due process analysis:

> Due process protects individual defendants from being bound *in personam* by judgments of a forum with which they lack meaningful relations, *see Burger King Corp v. Rudzewicz*, 471 U.S. 462, 471-72 (1985), and that requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stewart, J., concurring in the judgment). The "fair warning" requirement affords a degree of predictability to the legal system and permits potential defendants to structure their conduct "with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See also Burger King*, 471 U.S. at 472. In determining whether the exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum," *Burger King*, 471 U.S. at 474, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

*Lake Shore*, 886 F.2d at 657-58. In applying these principles to the facts, the Fourth Circuit concluded the defendants' contacts with South Carolina suggested an "absence of purposefulness." *Id*. at 658. Although the plaintiff argued it was foreseeable that defendants' products would dock in various ports, including Charleston, the Fourth Circuit stated that "[f]oreseeability alone . . . 'has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at 295). The likelihood that a product would make its

5

way into a state was not critical to a due process analysis; "[r]ather it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*.

The court further noted that the plaintiff had not proved the defendants "purposefully availed" themselves of the privilege of conducting business in South Carolina. *Id*. Neither Lake Shore nor Peterson maintained offices in South Carolina, nor were they licensed to do business in the state. *Id*. Neither had agents or subsidiaries in South Carolina, and neither maintained a bank account or owned property there. *Id*. While there was evidence that Lake Shore made sales to South Carolina customers after the accrual of the action, all of those sales were initiated by the customer and thus were not the result of sales efforts by Lake Shore in South Carolina. *Id*. The court further stated,

> The case is . . . distinguishable from those "stream of commerce" cases where a manufacturer employs an intermediary or distributor in the forum state and thereby benefits legally from the protection provided by the laws of the forum and economically from indirect sales to forum residents. . . . From defendants' perspective, the vessel's presence in South Carolina was a mere fortuity and therefore cannot provide the basis for the exercise of personal jurisdiction. The unilateral activity of another party or a third person cannot satisfy the minimum contacts requirement of due process.

*Id*. at 659 (internal quotation marks and citations omitted). The court was careful to note that it did not reject a "stream of commerce" theory in all circumstances but rather concluded it had no applicability. *Id*. "Factors that might make such a theory applicable, such as marketing and advertising a product for the forum state, are absent." *Id*. at 660. The court therefore affirmed the judgment of the district court dismissing the action for want of personal jurisdiction.

JKR cites a more recent Fourth Circuit opinion: *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994). The plaintiff in that case brought action against Lorillard and

6

Hollingsworth in the District of Maryland, alleging that her husband's death was caused by asbestos incorporated by the defendants into Kent brand cigarettes. *Lesnick*, 35 F.3d at 940. Hollingsworth, a Massachusetts corporation, manufactured the filter material in Massachusetts and shipped it to Lorillard's plants in Kentucky and New Jersey. *Id.* Hollingsworth filed a motion to dismiss for lack of personal jurisdiction, and when the district court granted the motion, the plaintiff appealed. *Id.* The court examined the Supreme Court's jurisprudence on the due process analysis and stated, "While *World-Wide Volkswagen* has been cited for the proposition that personal jurisdiction may follow a product if it is delivered into the stream of commerce with the expectation that it will be purchased by consumers in the forum state, we read the holding of the case to be much narrower, requiring purposeful activity on the part of the defendants to establish a meaningful contact with the forum state." *Id.* at 944 (citations omitted). The Fourth Circuit held

> that the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Id.* at 945-46.

Applying this test, the Fourth Circuit concluded the district court correctly determined it did not have personal jurisdiction over Hollingsworth. It noted that Hollingsworth was a Massachusetts corporation with its principal place of business in Massachusetts. *Id.* at 946. It had no office, agent, employee, or customers in Maryland. *Id.* Hollingsworth was not registered to do business in Maryland and "directed no marketing effort or other activities toward the state." *Id.* Even though

7

Hollingsworth had a close relationship with Lorillard, such fact was held not to "rise to the level of establishing jurisdiction because none of the conduct is in any way directed *toward the state of Maryland*." *Id*. at 946-47.  The court stated,

> All of the listed contacts between Lorillard and Hollingsworth & Vose relate only to Hollingsworth & Vose's agreement to supply filters from its plant in Massachusetts to Lorillard in Kentucky and New Jersey.  While the result might be different if Hollingsworth & Vose had changed production to comply with Maryland regulations or if it had set up a customer relations network there, on the record in this case, we can discover no affirmative action by Hollingsworth & Vose rising to the level of purposeful availment.

*Id*. at 947.

### A.    The Arguments and Evidence in the Record

In the case *sub judice*, JKR argues it is entitled to dismissal because (1) the court lacks general in personam jurisdiction because JKR does not have an "enduring relationship" with South Carolina as required by South Carolina Code § 36-2-802; (2) the court lacks specific in personam jurisdiction because South Carolina's long-arm statute does not authorize jurisdiction; and (3) the exercise of jurisdiction would violate due process.  (*See* Mot. to Dismiss at 1-2.)  JKR states,

> As a corporate entity, JKR has no connection to South Carolina.  It was not incorporated under the laws of South Carolina and is a Georgia company with its principal place of business in Savannah, Georgia.  It conducts no business in South Carolina.  As alleged by the Plaintiff the contract for the vehicle at issue in this case was entered into at JKR's facility in Savannah, Georgia.  As alleged by the Plaintiff, the RENTER obtained the vehicle from JKR's facility in Savannah, Georgia.

(*Id*. at 2.)  JKR asserts it "has done nothing to subject itself to the jurisdiction of South Carolina's courts.  Specifically, JKR's sole act that has subjected it to this lawsuit was being chosen by RENTER as the car rental agency from which she obtained a vehicle."  (*Id*. at 3.)

Plaintiff, in its Supplemental Memorandum in Opposition to JKR's Motion to Dismiss, states that jurisdictional discovery "shows that JKR, on a regular basis:"

      1. employed the services of South Carolina automobile brokers, auctions and dealerships;
      2. sold vehicles to South Carolina residents;
      3. since 2001 rented at least 1,408 cars to South Carolina residents;
      4. since 2003 made over 17,000 rentals to customers who, at the time of renting, told JKR that the vehicles would be taken into South Carolina;
      5. sold insurance coverage to renters knowing that the car would be taken into South Carolina;
      6. sold insurance coverage knowing that the insurance coverage would apply in South Carolina;
      7. As a part of the license agreement to operate a Dollar Rent a Car franchise, JKR purchased Beaufort County South Carolina as part of its exclusive franchise territory;
      8. JKR signed UCC-1 forms that were filed with the South Carolina Secretary of State as part of the license agreements it has with the car rental companies;
      9. On its standard rental form, JKR specifically authorizes renters to operate cars in limited states, including South Carolina;
      10. As to the specific rental at issue, JKR authorized its vehicle to be used in South Carolina;
      11. JKR knew that the vehicle at issue would be used in South Carolina; and
      12. As to the rental at issue, sold insurance coverage to the renter knowing it would be used in South Carolina.

(Pl.'s Supplemental Br. at 2-3.)

JKR and Dollar Rent-a-Car Systems entered into a License Agreement, and this agreement states in part, "Provided you are in full compliance with and not in default of this Agreement, We shall not, during the terms of this Agreement, operate or grant a license for the operation of another Dollar Business within your Territory." (Pl.'s Supplemental Br. Ex. A.) Attachment A to the License Agreement indicates that JKR purchased such rights to five counties in the state of Georgia as well as Beaufort County in the State of South Carolina. (*Id*.) Attachment B lists the locations "to be operated . . . pursuant to this License Agreement and the time period within which operations must begin at each location." (*Id*.) Two locations are listed: Savannah Airport, where operations must begin by May 1, 2000, and Hilton Head Island Airport, where operations must begin by May 2, 2002. (*Id*.) Attachment B also states, "If operations do not begin within the time periods indicated, the License Agreement is subject to termination by Us without notice in accordance with

Section 18.3(f) thereof or, at Our option, the Territory shall revert to Us without notice except with respect to the area within a three (3) mile radius of any Location then being operated by You pursuant to this License Agreement." (*Id*.) The effective date of the Agreement was April 1, 2000, and the agreement expires on April 1, 2010. (*Id*.)

In addition, JKR signed two South Carolina UCC-1 financing statement forms that were filed with the South Carolina Secretary of State. (Pl.'s Supplemental Br. Ex. B.) The Master Lease Agreement between Dollar Rent a Car Systems, Inc. and JKR states,

> Dollar and Lessee agree that the person(s) or firm(s) financing Dollar's acquisition or lease of Vehicles ("Lender") may perfect its lien in or to any such Vehicles by notation of same on the title of any such Vehicles and by filing and/or recording with the appropriate state or local agency in the state where either Dollar or lessee resides or where Dollar or lessee does business, or any or all of these, a financing statement or similar document under the Uniform Commercial Code or state law pertaining to such filings and/or recordings of creditor's interests.

(Pl.'s Supplemental Br. Ex. J.) In addition, JKR's phone number is listed under "Dollar Rent A Car" in Hargray's Beaufort Regional Phone Directory,[1] (Pl.'s Supplemental Br. Ex. C), and the Supplemental Affidavit of J. Kurt Rodenburg, president of JKR, states,

> 3. That JKR & Associates, Inc. ("JKR") is a Georgia corporation with its principal place of business in Savannah, Georgia.
> 4. JKR is not engaged in business in the State of South Carolina. JKR owns no real property in South Carolina, and has no interest in or use of real property in South Carolina.
> 5. During the discovery process of producing documents, I was reminded and determined that JKR has the following business contacts in the State of South Carolina: 1) between February 2002 and April 2004 JKR used an automobile broker located in Columbia, South Carolina, and, 2) beginning in 2006 or 2007, JKR has used the services of the Chrysler dealership in Bluffton, South Carolina for warranty

---

[1]The cover of this phone book lists the following locations: Beaufort, Burton, Estill, Hampton, Laurel Bay, Luray, Parris Island, Port Royal, Ridgeland, St. Helena, Seabrook, Tillman, Varnville, Yemasee, *including all listings for Hilton Head Island, Savannah, and Charleston Businesses*. (Pl.'s Supplemental Br. Ex. C.)

repairs along with the dealerships in Springfield, Georgia and Savannah, Georgia. (Rodenburg Suppmental Aff. ¶¶ 3-5.)

Although JKR is located at the Savannah Airport in Savannah, Georgia, it rents vehicles to many customers who will drive into South Carolina, and JKR authorizes its customers to drive vehicles only in Georgia, Florida, Alabama, Tennessee, South Carolina, and North Carolina. (*See* Pl.'s Supplemental Br. Ex. K.)  In fact, thirty to forty percent of the vehicles JKR rents are driven into South Carolina. (Rodenberg Dep. 178:2-179:6, July 10, 2008.)  Furthermore, Plaintiff presented evidence that from 2001 to 2008, JKR made at least 1,408 rentals to customers presenting a South Carolina driver's license.  (Pl.'s Supplemental Br. Ex. M.)[2]  JKR also acknowledged that it sells Supplemental Liability Insurance to customers because it anticipates the possibility of an accident involving its vehicles, including in South Carolina.  (Rodenberg Dep. 36:4-36:19.)

Plaintiff presented evidence that on March 27, 2003, JKR sold two vehicles to an automobile dealership in Florence, South Carolina, and that on March 10, 2003, JKR sold a vehicle to an individual or a business in Gaston, South Carolina.  (*See* Pl.'s Supplemental Br. Ex. O.)  Plaintiff presents an invoice from JKR to an individual in Leesville, South Carolina representing the sale of a vehicle to the South Carolina customer on May 29, 2002, and the invoice states, "SC TAX EXEMPT (Cust. To pay taxes in SC)."  (Pl.'s Supplemental Br. Ex. P.)  In 2003, JKR used a Darlington, South Carolina company to sell a vehicle to a customer in Orangeburg, South Carolina. (Pl.'s Supplemental Br. Ex. R.)

As noted, JKR filed a Reply to Plaintiff's Supplemental Brief on August 11, 2008.

---

[2]This same exhibit reveals that from 2003 through June of 2008, JKR made approximately 24,470 rentals to customers not from South Carolina.  (Pl.'s Supplemental Br. Ex. M.)

11

According to JKR, Plaintiff's Supplemental Memorandum "largely misses the mark because it fails to recognize the extent to which JKR withdrew its contacts with South Carolina before the events alleged in Plaintiff's Complaint, and because Plaintiff wishes to attribute to JKR those actions either instigated by third-parties or required as a matter of law." (JKR's Reply at 1.) With respect to Plaintiff's Exhibit O, which indicates the sale of vehicles in March of 2003 to a customer in Florence, South Carolina, and a customer in Gaston, South Carolina, JKR states, "[B]oth bills of sale list JKR's address in Savannah, Georgia, and it appears that the buyers bought these vehicles directly from JKR in Savannah, Georgia." (*Id*. at 4.) JKR also notes that neither of these invoices charge Georgia sales tax, an indication that the cars were going to South Carolina. (*Id*. at 4-5.) JKR highlights the fact that the invoice in Exhibit P specifically states that the customer is to pay taxes in South Carolina, "again indicating that the buyers came to Savannah, Georgia, to purchase the vehicle." (*Id*. at 5.)

JKR addresses Plaintiff's contention that JKR is subject to personal jurisdiction in South Carolina because it purchased the Beaufort, South Carolina territory by asserting that the terms of the License Agreement itself show that JKR lost its Beaufort territory in May of 2002. (*Id*. at 6.) JKR states, "In accordance with Attachment B to the License Agreement, JKR was to open its Hilton Head Airport franchise by May 2, 2002, which did not occur. The License Agreement is clear that, as of May 2, 2002, when JKR did not open a franchise at the Hilton Head Airport, Beaufort County reverted to Dollar." (*Id*.) JKR also attaches a letter dated October 31, 2003, from Dollar Rent a Car to Kurt Rodenburg. (*See* JKR's Reply Ex. D.) The letter indicates that the territory for Hilton Head, South Carolina, "has now reverted back to Dollar Rent A Car, Inc." (*Id*.)

Lastly, JKR asserts that Plaintiff's other evidence in support of jurisdiction is overstated or

misleading. (JKR's Reply at 8.) JKR asserts that it did not make any UCC filings but that Dollar did so in anticipation of the potential Hilton Head Airport franchise. (*Id.*) JKR states the evidence concerning the Beaufort phone book is unavailing because "Plaintiff provides the Court with a 'white pages' directory listing that lists the JKR Dollar franchise as a '<u>Savannah</u> Business.' The 'white pages' were not paid for or requested by JKR." (*Id.*)

## B.    General Jurisdiction

A state may assert general jurisdiction over a defendant when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state. The plaintiff must prove that the defendant's contacts are "continuous and systematic" to support the exercise of general jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 213 (4th Cir. 2002). For minimum contacts to exist, "there must 'be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Base Metal*, 283 F.3d at 213 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Furthermore, "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. For a court to have general jurisdiction, the requisite minimum contacts between the defendant and the forum state must be "'fairly extensive.'" *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971). Indeed, the Fourth Circuit stated in *Nichols*,

> "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *International Shoe*, 326 U.S.

13

> at 317. Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id*. at 318. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id*.

*Nichols*, 991 F.2d at 1199. The Fourth Circuit has also indicated that "broad constructions of general jurisdiction should be generally disfavored." *Id*. at 1200; *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004) ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.").

In the case *sub judice*, JKR did sell a few vehicles to individuals or businesses located in South Carolina, but at least one of these sales took place in Georgia, not South Carolina. Furthermore, although JKR's phone number does appear in a Beaufort phone book, that very phone book indicates that JKR is a *Savannah* business, and in any event, JKR did not seek to be included in this phone book, nor did it pay a fee to have its number listed therein. JKR did sign the two forms on file with the South Carolina Secretary of State, but the forms were actually filed by Dollar. JKR rented vehicles to several individuals who were South Carolina residents and to several individuals who intended to (and did) drive the rented vehicle into South Carolina. The court concludes, however, that in so doing, JKR was simply serving the Savannah, Georgia market. The city of Savannah is indeed located very close to South Carolina, but such proximity is not a basis for subjecting JKR to the jurisdiction of courts in South Carolina when JKR has done nothing to serve the South Carolina market.

Plaintiff's best evidence in support of jurisdiction is the evidence that JKR purchased the territory of Beaufort County, South Carolina. Had this lawsuit arisen at a different time, perhaps

the court's analysis would be different. However, this lawsuit was filed in November of 2007, and JKR and other Defendants rented the vehicle in question to Udell on November 13, 2004. The License Agreement gave JKR until May 2, 2002, to open a location at the Hilton Head Island Airport, and JKR did not do so. Furthermore, Dollar Rent A Car sent a letter to JKR in 2003 indicating that the Hilton Head territory had now reverted back to it. Thus, whatever contacts JKR had with South Carolina with respect to its territory no longer remained at the time this lawsuit arose, and in any event, it is clear that whatever rights JKR has or may have had in the past, JKR has not undertaken to serve any market in South Carolina. The court therefore concludes that JKR is not subject to general jurisdiction in this court. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002) ("Appellees did little to purposefully avail themselves of the privilege of conducting activities within South Carolina. They merely contacted a French citizen residing in South Carolina for assistance in securing licenses. Appellees have no offices, agents, or employees in South Carolina and do not advertise in South Carolina."); *Nichols*, 991 F.2d 1195 (concluding there was no general jurisdiction in Maryland for a company that employed thirteen Maryland residents, stored some property in Maryland, had a one-time contract with a Maryland firm to do some of its drug research, held two regional and one national meetings for district managers in Maryland, made millions of dollars of sales in Maryland, and made less than one percent of its total purchases in Maryland); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (concluding the court did not have general jurisdiction over a drug company when the company's only activities in the state "consist of advertising and employing salesmen to solicit orders"); *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645-46 (D.S.C. 2005) (rejecting plaintiff's argument that the court may exercise general jurisdiction "over the [d]efendant based on the fact that [d]efendant, like every other

sophisticated bank, wires funds from customers' accounts in Mexico to banks in South Carolina at customer requests and receives wire transfers from banks in South Carolina sent to customers' bank accounts at Bancomer in Mexico" and noting that "such customer-initiated bank-to-bank wire transfers do not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank"); *Reynolds & Reynolds Holdings*, 301 F. Supp. 2d 545 (concluding (1) the court did not have general jurisdiction over a defendant merely because it complied with the Virginia registration statute and appointed an agent for service of process in Virginia and (2) the fact that 0.4% of its sales were made in Virginia and that it had a "continuing relationship with only two dealerships with which it . . . transacted only $7,152 worth of business over the last two years" did not rise to the level of "systematic and continuous" contacts sufficient to impose general jurisdiction).

## C.     Specific Jurisdiction

Plaintiff argues that even if this court concludes that general jurisdiction does not exist, it should conclude that specific jurisdiction exists. Plaintiff states,

> [S]pecific, *in personam* jurisdiction exists because JKR knowingly rented a vehicle and sold insurance to a renter it knew would be using the vehicle in South Carolina. Even after the fire in South Carolina, JKR insisted on being paid its rent and for the insurance coverage it sold. Given the foreseeability of harm and actual knowledge of the use of the vehicle and insurance sold . . . , there is nothing fundamentally unfair or improper about JKR being haled into court in South Carolina under these circumstances.

(Pl.'s Supplemental Br. at 24.)

For specific jurisdiction to exist, the controversy must "arise out of or relate to" the defendant's contacts with the forum state. *Helicopteros*, 466 U.S. at 414; *see also ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 331-32 (D.S.C. 1999) ("Specific jurisdiction requires that the

out of state defendant engage in some activity purposely aimed toward the forum state and that the cause of action arise directly from that activity.")  Courts in this circuit must examine three factors to determine whether the exercise of specific jurisdiction is appropriate: (1) whether and to what extent the defendant purposefully availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of those forum-related activities, and (3) whether the exercise of jurisdiction is constitutionally "reasonable."  *Christian Science Bd. of Directors of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001) (citing *Helicopteros*, 466 U.S. at 414-16, and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985)).  In order for specific jurisdiction to exist, the defendant's actions must be "directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).  A single contact with South Carolina may be sufficient to give this forum personal jurisdiction over a defendant when that contact gives rise to, or figures prominently in, the cause of action under consideration.  *See Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976); *Long v. Baldt*, 464 F. Supp. 269, 275 (D.S.C. 1979) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)).

In the case *sub judice*, JKR did not purposely avail itself of the privileges of conducting activities in South Carolina, nor did it invoke the benefits and protections of South Carolina's laws. All contracting concerning renting the vehicle itself, as well as purchasing insurance, occurred in Savannah, Georgia.  Plaintiff points to the fact that JKR knew its vehicles were being driven into South Carolina, but as the Fourth Circuit noted in *Lake Shore*, "[f]oreseeability alone . . . 'has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Federal Ins.*

17

*Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (quoting *World-Wide Volkswagen*, 444 U.S. at 295). Furthermore, unilateral activities of third parties are not an appropriate consideration in determining whether a defendant has sufficient contacts with a forum to warrant the exercise of jurisdiction. *See Kulko v. Superior Court of Cal.*, 436 U.S. 84, 93 (1978) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . .").[3] The remainder of Plaintiff's limited contacts with South Carolina are not related to Plaintiff's claim. Because the court concludes Plaintiff has not made a showing that JKR purposely availed itself of the privileges of conducting activities in South Carolina or that Plaintiff's claims arose out of JKR's

---

[3] Plaintiff cites to several Florida cases to support its assertion that this court has personal jurisdiction over JKR. In *Bill Holt Sales & Leasing, Inc. v. Cousins*, 904 So. 2d 502, 504 n.3 (Fla. Dist. Ct. App. 2005), the court stated, "The rule is firmly established that the consent of the vehicle's non-resident owner to another driver's use of the vehicle in Florida constitutes sufficient minimum contacts with Florida to confer personal jurisdiction over the vehicle's owner." The Florida court in *Bill Holt* was revisiting a prior interlocutory order which decided that the trial court's non-final order was appealable. *Bill Holt*, 904 So. 2d 502. In *Sierra v. A Betterway Rent-A-Car, Inc.*, 863 So. 2d 358 (Fla. Dist. Ct. App. 2003), the Florida court determined a rental car leasing agency was subject to personal jurisdiction in Florida when it was aware its vehicles were driven into Florida, did not discourage or prohibit its customers from driving into Florida, and knew that the particular vehicle at issue was being brought into Florida. The court stated, "When Budget rented the vehicle with no restrictions as to where it could be driven, it was reasonable to expect it could come to Florida, be involved in an accident here and Budget be haled into court here. . . . A factor that must be considered to determine whether sufficient minimum contacts exist to justify personal jurisdiction is the foreseeability that the defendant's conduct will result in suit in the forum state.") The court is not persuaded by these opinions for two reasons. First, these opinions are from Florida state courts and are thus not binding precedent herein. Second, and more importantly, the Florida courts appear to be relying on reasoning rejected by the Fourth Circuit in *Lake Shore*. *See Lake Shore*, 886 F.2d at 658 ("Foreseeability alone . . . has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." (internal quotation marks omitted)).

South Carolina-related activities, the court need not consider whether the exercise of jurisdiction would be reasonable. *See Yates v. Motivation Indus. Equip. Ltd.*, 38 Fed. App'x 174, 179 (4th Cir. 2002) (citing *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999); *Doe I v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001)). The court concludes JKR is not subject to specific *in personam* jurisdiction.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant JKR's Motion to Dismiss is **GRANTED**.

**AND IT IS SO ORDERED**.

                                                    _____
                                                    PATRICK MICHAEL DUFFY
                                                    United States District Judge

**Charleston, South Carolina**
**September 8, 2008**