**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| EMPIRE FIRE & MARINE INSURANCE COMPANIES AND ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

C.A. No.: 2:07-CV-04027-PMD

**ORDER**

This matter is before the court upon Defendant's Empire Fire & Marine Insurance Companies' ("Empire") motion for summary judgment to determine whether there is additional automobile liability insurance coverage through a supplemental liability insurance ("SLI") policy issued by Empire as a result of a rental of a vehicle from the Dollar Rent A Car franchise in Savannah, Georgia. Based on the following, the court grants Defendant's motion for summary judgment.

## BACKGROUND

On November 13, 2004, Ms. Eileen Udell ("Udell") rented a silver 2005 Dodge Caravan from JKR and Associates, d/b/a Dollar Rent A Car, in Savannah, Georgia. Udell was to return the vehicle on November 14, 2004. At the time of the rental, Udell opted to buy one million dollars of Supplemental Liability Insurance ("SLI") from Empire. Udell signed the rental agreement as a renter and authorized driver. Dollar Rent A Car then gave Udell a copy of the rental agreement that she signed.

After renting the car in Savannah, Georgia, Udell then drove the car to Folly Beach, South Carolina. On November 15, 2007, one day past the return date, Shirley Carney ("Carney"), a resident of Folly Beach, observed Udell taking plants and flowers from the yard across the street and placing them into the rental car. *Carney Dep.* at 7. Carney also noticed Udell pulling up the mailbox and attempting to place it in the rental; however, the mailbox would not fit and broke the window out of the rental car, and so Udell threw the mailbox out of the window. *Id.* at 8. Carney then confronted Udell and told Udell to stay put while she called the police. *Id.* Despite agreeing to stay, Udell returned to the rental car and left the scene. *Id.* After Udell fled from the scene, Officer Reiter ("Reiter") of the Charleston County Sheriff's Department responded to Carney's call. *Id.*

When Reiter arrived at the scene, he talked with Carney and noticed some turned over plants around the front porch area and a mailbox lying on the ground. *Reiter Dep.* at 8. After receiving a description of Udell and the silver minivan, Reiter began to drive around the area looking for Udell. *Id.* at 9-10. At one point, Reiter passed Udell's minivan going southbound on Folly Road; however, Reiter was then dispatched to respond as backup to another location and could not turn around to follow Udell. *Id.* at 10. Reiter remembers seeing the back hatch of the minivan open and clearly seeing potted plants in the back of the van. *Id.* As Reiter was driving to respond to the call for backup, the call for backup was canceled, and Reiter immediately turned around and headed towards Folly Beach to find Udell. *Id.* As Reiter began searching for Udell and her silver minivan, he spotted a trail of potted plants going down the road as if they had fallen out of the back of the minivan. *Id.* at 12. Reiter stated that his intention was to find Udell and arrest her for larceny. *Id.* As Reiter continued to search the area for Udell, a call came in reporting a fire in progress at 1215 East Arctic Avenue in Folly Beach. *Id.* at 13. When

Reiter arrived at the scene of the fire, he found a silver minivan underneath a house raised on stilts. *Id.* The hood of the minivan was on fire, and the fire was spreading to the house. *Id.* Once the fire was under control, Reiter looked inside the minivan and saw potted plants and yard art of two Folly Beach residents. *Id.* at 15. At that point, Officer Reiter arrested Udell and charged her with petty larceny and malicious injury to property. *Id.* at 17. Udell pled guilty to the charges. *Id.*

The house damaged by the fire belonged to Mr. Frank Torchia ("Torchia"). Plaintiff Underwriters at Lloyd's, London ("Llyod's") insured Torchia's house for fire and paid the loss. The mandatory automobile liability primary coverage of $25,000 applicable to the Dodge Caravan was paid by Dollar Rent A Car through its self-insured retention on an Empire policy to Torchia, via a covenant not to execute. In addition, Torchia was paid $50,000 by Udell's "at home" coverage with GEICO—the non-owned vehicle coverage from Udell's vehicle at home— in exchange for signing a limited release which released Udell except to the extent there is additional insurance available.

On November 9, 2007 Lloyd's filed suit in the Court of Common Pleas for the Ninth Judicial Circuit, and the case was removed on December 14, 2007. Lloyd's is pursuing Empire for reimbursement of the remainder of the fire loss to Torchia's home, and Empire has denied coverage under the SLI policy. On September 24, 2009, Empire moved for summary judgment.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *Anderson,* 477 U.S. at 248.

## ANALYSIS

**I.      Choice of Law**

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity case, a federal court must apply the choice of law rules of the state in which it is located. *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Spartan Iron & Metal Corp. v. Liberty Ins. Corp.*, 6 Fed. Appx. 176 (4th Cir. 2001); *Bowman v. The Continental Ins. Co.*, No. 99-2540, 2000 WL 1173992, at *3 (4th Cir. June 7, 2000).

South Carolina's choice of law rules encompass both the traditional *lex loci contractus* doctrine and S.C. Code Ann. § 38-61-10. Historically, South Carolina courts followed the rule of *lex loci contractus* and applied the law of the state where the insurance contract was formed. *See e.g. Bowman*, 2000 WL 1173992, at *3 (citing *Jones v. Prudential Ins. Co.*, 42 S.E.2d 331,

333 (S.C. 1947) (holding that, under the traditional *lex loci contractus* rule in the absence of § 38-61-10, the contract was governed by the law of the place where it was formed, despite the insured's move into South Carolina where the action was brought); *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993) (holding that a contract for insurance is governed by the law of the state where the application was made, the policy delivered and the contract formed).

However, the traditional rule of *lex loci contractus* is modified by S.C. Code Ann. § 38-61-10, a statute enacted in 1947. That statute provides:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10. "Where this statute applies, it governs as South Carolina's rule of conflicts." *Sangamo Weston Inc. v. Nat'l Surety Corp.*, 414 S.E.2d 127, 130 (S.C. 1992). However, where § 38-61-10 is found to be inapplicable, the court will apply the traditional rule of *lex loci contractus*.

In *Unisun,* 436 S.E.2d 182*,* the South Carolina Court of Appeals decided a choice of law question under facts similar to the present case. In *Unisun,* the plaintiffs were injured in an automobile collision in South Carolina, and they subsequently filed a declaratory judgment action seeking a determination of the scope of insurance coverage. In resolving the choice of law question, the court recognized that the insurance policy at issue had been executed in New York by "a resident of New York with a corporation doing business in New York." *Id.* at 184. Moreover, the policy insured an automobile registered in New York. *Id.* Under these facts, the court found section 38-61-10—and correspondingly, South Carolina law—inapplicable, since "*at*

5

*the time the contract was made,* the property and interests insured were in the State of New York." *Id.* at 184 n. 1 (emphasis added).

In the present case, the court finds that § 38-61-10 does not apply and that, therefore, under the traditional rule of *lex loci contractus,* Georgia law governs this dispute. Udell rented the minivan in Georgia from a Georgia corporation. The insurance policy at issue was executed in Georgia to cover a rental car stored at Dollar Rent A Car's Savannah, Georgia location. Udell, at the time of the rental, lived in Port St. Lucie, Florida. The only nexus with South Carolina is the location of the automobile fire, which the *Unisun* decision indicates is insufficient, standing alone, to trigger § 38-61-10. Therefore, because the insurance policy does not cover property, lives, or interests in this State under § 38-61-10 and because the insurance contract was formed in Georgia, Georgia insurance law controls the resolution of this case.

## II. The Policy

The Policy in this case was issued by Empire and provides excess coverage against third-party claims arising out of the use or operation of the vehicle for the difference between the primary protection and a maximum combined single limit of one million dollars per occurrence for bodily injury, death, and property damage to other than the vehicle while the vehicle is on rent to the insured. The parties have stipulated that "[u]nless there is an applicable coverage defense, Empire must provide SLI insurance coverage for Eileen Udell of up to One Million Dollars minus the applicable state minimum limits of insurance coverage of Twenty-Five Thousand Dollars for the claim made or asserted by Lloyd's as subrogee of Frank Torchia for the fire that burned the Folly Beach house on or about November 15, 2004."

The "policy provides excess auto liability insurance and only applies to a 'loss' involving 'bodily injury' and 'property damage' caused by an 'accident' and resulting from the use of a

covered 'rental vehicle.'" The Policy also contains multiple exclusions from coverage including an exclusion for "loss arising out of the use of a 'rental vehicle' when such use is in violation of the terms and conditions of the 'rental agreement.'"

The rental agreement provides a list of "prohibited uses" of the rental vehicle and states that "the vehicle may not be used: . . . (3) for any illegal purposes, or in the commission of a crime; . . . [or] (4) to intentionally cause damage, or engage in willful, wanton or reckless misconduct." The rental agreement further states that "for the purposes of this agreement, willful, wanton or reckless misconduct includes but is not limited to: (1) the unauthorized use of the vehicle on other than regularly maintained hard surface roadways, private driveways or parking lots, which unauthorized use directly results in damage or loss to the vehicle." Finally, the rental agreement provides that "you will return the vehicle to the renting location on the date and time noted on the rental statement [November 14, 2004], or sooner, if we request."

Udell signed the rental agreement to acknowledge these terms. The rental agreement provides that "any prohibited use of the vehicle is a material breach of this agreement and will void or deprive you of all benefits, protection and optional coverages, if any, to which you would have otherwise been entitled to under this agreement. . . ." The list of prohibited uses and the statement informing Udell that a violation of the agreement would void any optional coverage is printed in bold, all capitalized letters.

### III. Policy Exclusion for Use of the Vehicle for Illegal Purposes or in the Commission of a Crime Precludes Coverage in this Case

In its memorandum in support of summary judgment, Empire argues that Udell is not entitled to SLI coverage because of multiple violations of the rental agreement. Specifically, Empire argues that Udell violated the rental agreement (1) by returning the vehicle a day past the return due date; (2) by intentionally starting the fire to the car or by engaging in wanton or

reckless misconduct that caused the fire; and (3) by using the vehicle for an illegal purpose or in the commission of a crime. Empire argues that any of these violations of the rental agreement voids coverage under Udell's SLI policy.

As to the first violation, Empire notes that the rental agreement clearly states that the vehicle was due back November 14, 2004 but that the fire and events at Folly Beach occurred on November 15, 2004. Second, Empire argues that Udell either intentionally set the minivan on fire or that she spun the minivan's wheels in the sand causing the fire, and that either conduct is prohibited conduct under the rental agreement. Empire claims that Udell intentionally set fire to the rental car; however, Lloyd's claims that Udell's spinning of her wheels and/or shifting to get out of the loose sand underneath the house caused the fire. Empire claims that either conduct constitutes willful, wanton, or reckless misconduct, which is prohibited under the rental agreement. While arson is clearly willful misconduct, Empire also argues that operating the vehicle on loose sand underneath the house is wanton or reckless misconduct because the agreement defines willful, wanton or reckless conduct as including operating the vehicle "on other than regularly maintained hard surface roadways, private driveways or parking lots." Empire claims that loose sand underneath the house is not a hard surface roadway, private driveway, or parking lot, and that, therefore, operation of the rental vehicle on the loose sand is wanton or reckless misconduct under the terms of the rental agreement. Lastly, Empire argues that Udell's use of the minivan to steal and transport plants, mailboxes, and yard art, and then to evade law enforcement, is a prohibited use of the vehicle under the rental agreement. Therefore, under any or all of the conduct described above, Empire argues that it is entitled to summary judgment declaring that there is no coverage under the SLI policy at issue.

Lloyd's argues that each basis by which Empire seeks to deny coverage turns upon a question of fact, and that, therefore, summary judgment is inappropriate. Lloyd's also argues that keeping the rental vehicle past the return date is irrelevant since Udell was charged for and paid for the additional time she had the rental car, and since Udell paid for an extra day of coverage under the SLI policy. In addition, Lloyd's argues that Udell's other violations of the rental agreement do not void the SLI policy because Empire has failed to establish a causal link between the rental agreement violation and the loss. Lloyd's cites to South Carolina case law to support its argument that for an exclusion to apply there must be a causal relationship between the loss and the exclusion; however, as discussed above, Georgia law applies in this case. For example, as to Udell's use of the vehicle to steal plants, mailboxes, and yard art, Lloyd's argues that Empire must show that stealing those items caused the fire to start at the beach house; however, Lloyd's fails to cite to any Georgia case law requiring that the loss be caused by the excluded conduct. Lloyd's also argues that under Georgia law "a blanket exclusion for any violation of the motor vehicle code is void as against public policy." *Pl. Opp'n Memo* at 8 (citing *Gen. Car & Truck Leasing Sys., Inc. v. Woodruff,* 447 S.E.2d 97 (Ga. Ct. App. 1994). Finally, Lloyd's notes that Udell claims that at the time of the fire, she was not trying to run from or hide from the police that she knew had been called by Carney, but that she was instead looking at that beach house as a possible rental in the future.

The court finds that Udell's use of the rental vehicle for an illegal purpose and in the commission of a crime precludes coverage under the SLI policy at issue in this case. As stated above, the policy excludes from coverage "loss arising out of the use of a 'rental vehicle' when such use is in violation of the terms and conditions of the 'rental agreement.'" The rental agreement provides a list of "prohibited uses" of the rental vehicle and states that "the vehicle

9

may not be used . . . for any illegal purposes, or in the commission of a crime." Thus, the exclusion by its terms requires that the loss **arise out of** the violation of the rental agreement—in other words, in this case, that the fire damage **arise out of** the use of the vehicle for an illegal purpose or in the commission of a crime. Therefore, Lloyd's is correct that Empire must demonstrate some causal connection between the excluded conduct and the loss under the plain language of the insurance policy; however, Lloyd's overstates how strong that causal connection must be when it argues that Empire must show that the fire was *caused by* Udell's plant, flower, and mailbox stealing.

The Georgia Supreme Court has given a very broad interpretation to the words "arise out of" and has held that the words "arising out of" in an exclusionary clause is focused solely upon the genesis of a plaintiff's claims. *Eady v. Capital Indem. Corp.,* 502 S.E.2d 514, 516 (Ga. Ct. App. 1998) (citing *Jefferson Ins. Co. v. Dunn,* 496 S.E.2d 696 (Ga. 1998)). And while Georgia—like all other states—does have a public policy strongly favoring compensation of innocent accident victims, that policy is limited in scope and "only extends to the minimum coverage limits mandated by Georgia's compulsory insurance law." *Cotton States Mut. Ins. Co. v. Neese*, 329 S.E.2d 136, 142 (Ga. 1985). Thus, the exclusion in the SLI policy will not be limited by Georgia public policy considerations since the SLI provides coverage in excess or and supplemental to the state mandated minimum coverage. "As Georgia's intermediate appellate court explained in *Drawdy*, once the state's public policy of ensuring a minimum recovery to accident victims is satisfied, the public's interest in low insurance premiums tips the balance of policy considerations toward enforcing exclusions as they are written in insurance contracts." *Wimberly v. Empire Fire and Marine Ins. Co.,* 192 F. Supp. 2d 406, 411 (D. Md. 2002) (Georgia Law).

Because the fire had its genesis in Udell's use of the rental vehicle for an illegal purpose and in the commission of a crime, Empire has properly denied coverage under the SLI policy. While Udell claims that at the time of the fire she was looking for possible rental beach houses, the evidence clearly shows that Udell was on Folly Beach stealing plants, flowers, and mailboxes; that Udell was aware that Carney had reported the criminal conduct to the police; and that while the police were still searching for Udell and while Udell was still transporting stolen goods, Udell's rental vehicle caught fire underneath a house on Folly Beach. Under these facts, the court finds that summary judgment is appropriate because no reasonable jury could find that the fire did not have its origins or genesis in Udell's use of the rental vehicle for an illegal purpose and in the commission of a crime.

As the entire claim for property damage is excluded by Udell's use of the vehicle for an illegal purpose or in the commission of a crime as discussed above, the court will not analyze the other violations of the rental agreement addressed in Empire's memorandum in support of its motion for summary judgment including Udell's returning the rental car one day past its return date and Udell's willfully, wantonly or recklessly causing the fire either by intentionally setting the fire or by operating the vehicle on other than regularly maintained hard surface roadways, private driveways, or parking lots.

Lastly, Empire notes that Defendant Zurich American Insurance Company ("Zurich") is not a proper party to this suit, and the court agrees. Zurich maintains an ownership interest in Empire; however, the SLI policy at issue was issued by Empire and not Zurich. Therefore, the court dismisses Zurich from this action.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendant Empire Fire & Marine Insurance Companies' Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 4, 2009**
**Charleston, SC**